LOUISA CATHARINE OSBORNE, DUCHESS OF LEEDS, *vs.* MARCELLA MCTAVISH and others.

### *Construction of a Will.*

A testatrix in one clause of her will devised to trustees, all her farms and other land in Frederick County, Maryland, "in trust to rent from year to year, to sue for and receive the rents thereof, and to divide them annually, or oftener, if possible, in equal portions between my surviving sisters. After the death of all my sisters, I leave the whole of said lands and farms to my nephew Charles Carroll McTavish, and his lawful issue, except &c." In the clause immediatly following the above, the testatrix continued: "I also give all my houses and lots, and ground rents in the city of Baltimore, except &c." to the same trustees, "in trust to receive the rents thereof," and after payment of an annuity of $200, charged thereon to W. C., and after his death, to his daughter H. "all the rest of the rents &c. I wish them to divide equally between my sisters during their lives, and when Mrs. McTavish dies, I wish her portion of *all my income* to be divided equally between her two sons; at the death of either of my other sisters, I wish the portion of the deceased to be divided among the surviving sisters; and after the death of all my sisters, I leave all the said property in the city of Baltimore, equally between my two nephews," subject to the annuity aforesaid. The testatrix died in 1854, leaving three sisters, Lady Stafford, who died in 1862, Mrs. McTavish, who died in 1867, and the appellant, who filed her bill in August, 1869, claiming the whole of the rents of the Frederick county lands as the sole surviving sister of the testatrix. HELD:

That the two clauses of the will should be construed together; and that so construing them, the intention of the testatrix was manifest that Mrs. McTavish's portion of the income derived from the farms and lands in Frederick county, as well as from the property in Baltimore City, should at her death pass to her two sons; and that, therefore, the complainant was entitled to receive during her life, one-half only of the rents and profits of the farms and lands in Frederick county, accrued since the death of her sister, Lady Stafford.

APPEAL from the Circuit Court of Baltimore City.

The object of the bill of complaint of the appellant in this case, was to obtain a construction of the will of the late Mary Anne, Marchioness of Wellesley. The two clauses in the will which gave rise to the controversy, are set out in the opinion of the Court. The complainant claimed in her bill to be entitled to receive the whole of the rents and profits of the farms and lands in Frederick County, Maryland, as the sole surviving sister of the testatrix. The Circuit Court, (PINKNEY, J.,) was of opinion that the two clauses of the will should be construed together, and that the testatrix had clearly manifested her intention that Mrs. McTavish's portion of her entire income, as well the share accruing to her upon the death of Lady Stafford, as that originally devised to her, and embracing, as well that derived from the farms and lands in Frederick County, as that derived from the Baltimore City property, should at the death of Mrs. McTavish, pass to her two sons. The Court thereupon decreed that the complainant was entitled to receive during her life, and no longer, only one-half of the rents and profits of the farms and lands in Frederick County, accrued since the death of Lady Stafford. From this decree, the complainant appealed.

The cause was argued before BARTOL, C. J., STEWART, BOWIE, GRASON, MILLER, and ALVEY, J.

*Edward Otis Hinkley,* for the appellant.

It was error to construe the two clauses together. It is true that, to gather the intent of the testatrix we should look at the whole will; but this rule does not justify the change of phraseology in one clause, to make it agree with that in another, when the two clauses are distinct and sensible, as separately written.

Moreover, if the clauses concern property, expressly located in the will as situate in widely different places,—

and the ultimate remainder is to different persons, and the whole phraseology is very different, there is no justice in importing the language of the one into the other. *Edelen vs. Smoot,* 2 *H. & G.,* 289; 1 *Jarman on Wills,* (*4th Ed.,*) 432 *marg.*; *Right, Ex dem. vs. Compton,* 9 *East,* 273; *Ellam vs. Westley,* 4 *Barn. & C.,* 667.

The differences in the phraseology are, some of them, relative only to the character of the lands and the duties of the trustees in collecting—for as to the farm lands, in Frederick, the trust is *to rent and sue for;* but of the Baltimore houses, lots and ground rents, it is only to *receive* the rents; these differences are not indeed material, or pertinent to the present inquiry, except to shew that the testatrix had a clear view of what she was doing, and used language quite appropriate to the particular subject of her disposition. The differences, however, in the mode of division prescribed are material, and we must suppose were purposely so made—to shew her two distinct intentions—in regard to her two different pieces of property.

In the first clause it is merely between "*my surviving sisters.*" But very different language is used in the second clause. The word *all* is used *four* times in the second clause, always in the same sense, viz., with reference to the Baltimore rents only. 2 *Jarman on Wills,* 744, 751; *Scott, et al. vs. Guernsey, et al.,* 48 *N. Y.,* 114. It is error to introduce extrinsic evidence, unless there be an ambiguity. See *Wigram on Extrinsic Evidence, and* 1 *Jarman on Wills,* 352-361, 366.

The conflicting nature of the decisions on the words of survivorship are shewn in *Branson vs. Hill,* 31 *Md.,* 181, and authorities there cited. But that case itself was decided on the words of limitation over, of the estate. *Latham vs. Latham,* 30 *Iowa,* 294; 1 *Redfield,* 428, 441; *Williams on Executors,* 1093, *note m and q*; 1098, *note l and m,* 1319, *note u; Roper on Legacies,* 417; *Sinton vs. Boyd,* 19 *Ohio St.,* 30; *Cunie and Naylor vs. Murphy,* 35 *Miss.,* 487.

*Thomas W. Hall, Jr., and Bernard Carter*, for the appellees.

According to every sound principle of testamentary construction, applicable under the circumstances, the two clauses of the will and the whole will, must be read and construed together, and the intention of the testatrix gathered as a whole, and as constituting one entire scheme of testamentary disposition; therefore, the clause directing that at Mrs. McTavish's death, her portion of *all the income* of the testatrix, should be divided between her two sons, and that at the death of either of the other sisters, the portion of the one so dying should be divided among the survivors, applies equally to the rents of the farms in Frederick County, and to the surplus remaining of the ground rents, &c., in Baltimore City. The clauses refering to the Baltimore City and Frederick County property, are the only clauses of the will which make any specific disposition of *income*. In neither clause, however, is the word "income" used, but "rents;" the use of the word "income" follows after, in the phrase already quoted, "her portion of *all* my income," as a *general* designation, following after the enumeration of particulars, and meaning, obviously, any, all, and every share which Mrs. McTavish might have in the division of the rents and profits of Lady Wellesley's estate, under any of the clauses of said will. *Douglas vs. Blackford,* 7 *Md.,* 22; *Iglehart vs. Kirwin,* 10 *Md.,* 563-4; *Smithers vs. Hooper,* 23 *Md.,* 285; *Young vs. Twigg,* 27 *Md.,* 624; *Taylor vs. Watson,* 35 *Md.,* 524; 2 *Jarman on Wills,* 764—5, *Rules* 7, 10, 11, 16.

This view is sustained by the language of *both* clauses. "*All my income*" means "all" and not a "part," still less, so insignificant a part as the inconsiderable surplus remaining for division of the rents in Baltimore City; and the direction to divide the Frederick County rents between the "*surviving sisters*" of the testatrix, excludes

the idea of the *sole* right of *one* surviving sister, after the death of the others, to take the *whole without division*.

If these several clauses are thus read together, as members of one general clause, and parts of one general scheme of disposition, all difficulty is removed,—a construction further favored by the fact, that in both cases provision is made for an equal division, by the same trustees, of the income of certain property, between the sisters of the testatrix, with a devise over, after the death of all the sisters, in one case, to the eldest nephew, and in the other, to the two nephews of the testatrix. If the opposite construction should prevail, and the clause specially referring to the rents of the Frederick County farms, be read without reference to what follows, still the claim of the Duchess of Leeds to the *whole* of said rents will be found without foundation, a new difficulty being created by the fact, that while only entitled, upon such construction, to *one-third* of said rents, she has received *one-half*.

Construing the first clause by itself, it appears that under it, at the death of the testatrix, her then surviving sisters took vested interests, each, in one-third of said rents, viz: an estate to each for the life of the longest liver of the three, which interest, at the death of any one of the three sisters, passed to her personal representatives, until the death of the longest liver, when the trust would cease, and the ultimate devise over in favor of C. C. McTavish take effect. No other construction of said clause taken by itself, is possible, in view of the well settled principles of law in this State, which always favor the vesting of estates and legacies, and do not favor either joint tenancies or the creation of cross-remainders or rights of survivorship, by implication.

The opposite construction which would affix different meanings to the words "my surviving sisters," and apply said words to different classes of persons, at the death of the testatrix, at the death of Lady Stafford, and at the

.death of Mrs. McTavish, (when they would come to mean the Duchess of Leeds alone,) has the authority of no adjudged case to sustain it, and is itself inconsistent, contradictory and unreasonable. *Fenby vs. Johnson,* 21 *Md.*, 117; *Turner, et al. vs Withers, et al.*, 23 *Md.*, 43; *Waters vs. Waters,* 24 *Md.*, 444-5; *Tayloe vs. Mosher,* 29 *Md.*, 450; *Branson vs. Hill,* 31 *Md.*, 190-1; *Art. 49, sec. 12, of the Code*; *Young vs. Robertson,* 4 *Mac Queen's Scotch App.*, 319; *Taaffe vs. Conmee,* 10 *House of Lords Cas.*, 77.

BOWIE, J., delivered the opinion of the Court.

The Marchioness of Wellesley, by her last will and testament duly executed to pass real estate, dated the 24th of September, 1852, and admitted to probate in the Orphans' Court of Baltimore City, in 1854, among other clauses therein contained, devised and bequeathed, as follows:

"I give and devise all my farms and other land, situate in Frederick County, in the State of Maryland, to General George Stewart, his brother, Doctor Richard Stewart, and to my nephew, Charles Carroll McTavish, in trust, to rent from year to year, to sue for and receive the rents thereof, and to divide them annually, or oftener, if possible, in equal portions between my surviving sisters. After the death of all my sisters, I leave the whole of the said lands and farms to my nephew, Charles Carroll McTavish, and his lawful issue, except the portion I intend to give, which is close to the Catholic chapel, which is built near my land. I also give all my houses and lots, and ground rents in the City of Baltimore, except the house in Mount Vernon Place, to General George Stewart, his brother, Richard Stewart, and my nephew, Charles Carroll McTavish, in trust, to receive the rents thereof, and first pay to William Carroll (whose land in the Alleghanies my mother bought) two hundred dollars a year during his life, and after his death, to pay the same to his daughter Henrietta, during her life, all the rest of the rents, etc., I wish them

Osborne *vs.* McTavish, *et al.*

to divide equally between my sisters during their lives, and when Mrs. McTavish dies, I wish her portion of all my income to be divided equally between her two sons; at the death of either of my other sisters, I wish the portion of the deceased to be divided among the surviving sisters; and after the death of all my sisters, I leave all the said property in the City of Baltimore, equally between my two nephews, but subject to the annuity of two hundred dollars a year to the said William Carroll, during his life, and after his death to his daughter Henrietta, during her life, the same sum, half of which annuity I charge each of my nephews, and their heirs, executors and assigns to pay."

The testatrix left three sisters, the Duchess of Leeds, Lady Stafford and Mrs. Emily McTavish. Lady Stafford died in 1862; Mrs. McTavish, in 1867, leaving Charles Carroll McTavish surviving her. The Duchess of Leeds filed her bill in the Circuit Court of Baltimore City, on the 14th of August, 1869, "*inter alia,*" setting forth the will, alleging the death of her sisters, and claiming, that upon the death of Mrs. McTavish, she, (the oratrix,) as sole surviving sister of the testatrix, under the dispositions of the will, was entitled to the whole of the rents of the farms and property devised to the trustees aforesaid.

That Mrs. Marcella McTavish, the executrix of Charles Carroll McTavish, who since the death of her testator had assumed the administration of the trust, refuses to account for and pay over to her more than a moiety of said rents, insisting that, according to a true construction of the will, the heirs and representatives of Emily McTavish, deceased, are entitled to the other moiety.

The answers of Mrs. McTavish, widow and executrix of Charles C. McTavish, and the other respondents, (who are parties in interest,) set up their claim to a moiety of the rents, as alleged in the bill, and the only question arising on this appeal is, whether the devises are to be construed separately and independently, or conjointly, and as one

entire devise and bequest, embracing several particular subjects.

The appellant maintains the former is the correct rule of construction, and contends it was error in the Court below, to construe the two clauses of the will together : That the subjects of the several clauses are separate and distinct properties, with ultimate remainders in different persons, and there is no propriety in importing the language of the one into the other.

It is contended that the legal operation of the phrase "between my surviving sisters" in the first clause, taken alone, is to vest in the complainant, as the sole survivor, a right to the whole of the rents ; and if the two clauses are construed together, the legal effect is, to vest the original portion of Mrs. McTavish only in her sons, and that portion is one-third.

Without referring to authorities for the rules of construction of wills and other instruments, which are familiar to the profession, and adopted by all Courts, we seek the intention of the testatrix, by surveying her surroundings ; her relation to the objects of her bounty ; the character and nature of the subjects she is disposing of ; the language she uses in making her dispositions ; and the collocation of the several devises. It was ingeniously argued by the appellant's counsel that the several clauses of the will were distinct items, and the division into items, connected with the different location of the properties, and different remainders, indicated that the devises to the surviving sisters were to be considered independently.

We find in the several clauses, as far as the devises of the rents during the lives of the sisters is concerned, unity in the subject, unity in the object, and unity in the agents to collect and distribute.

The rents are to proceed, it is true, from different estates, but it is wholly immaterial as a question of construction, whence they accrued ; the subject to be divided is *rents*, not

lands, and the difference in the location of the lands does not affect the argument.

As far as this Court can judge from the text of the will, as printed in the record, there is no division of the devises into items or paragraphs. The two clauses under consideration, are in immediate juxtaposition, separated only by a period. The second sentence or clause, commencing, "I also give," indicates another subject of devise, but the objects, and agents, as to the rents for life (subject to the annuity), are the same.

The directions to her trustees are here repeated, more minutely and circumstantially, as to the mode of division of the rents among her sisters, viz: "all the rest of the rents, etc. I wish them to divide equally between my sisters, during their lives, and when Mrs. McTavish dies, I wish her portion of all my income to be divided equally between her two sons; at the death of either of my other sisters, I wish the portion of the deceased, to be divided among the surviving sisters, etc."

There is, we think, a natural and obvious reason for the difference in the disposition upon Mrs. McTavish's death, from that upon the demise of her other sisters; the one had children to represent her; the others none. The voice of nature, as well as reason, dictated the change.

The subject matter of the devise being rents, accruing from year to year, to be divided annually or oftener if possible, in equal portions, between the surviving sisters of the deceased; the several devisees primarily acquired only a right to such rents as accrued during their respective lives, the ratio of each to be ascertained by the number living at the time of distribution; and whilst all lived, each was entitled to an equal share. The terms prescribing the division of the rents in the first instance (or during the joint lives of the three), in both clauses are equivalent.

In the first clause the direction to the trustees is, "to divide them annually, or oftener if possible, in equal portions between my surviving sisters."

In the second, the language is, "all the rest of the rents, etc., I wish them to divide equally between my sisters during their lives." The same idea, is conveyed in each, under a different form of expression i. e. whilst all lived they should share equally. But in the event of the death of the devisees, different rules of division were prescribed. "When Mrs. McTavish dies," the testatrix willed that her portion of all the testatrix's income, to be divided equally between her two sons; at the death of either of her other sisters, she wished the portion of the deceased, to be divided among the surviving sisters.

Mrs. McTavish thus had a right to share in the portion of either of her sisters, dying before her; but Lady Stafford, and the Duchess of Leeds, had no right to succeed to Mrs. McTavish's share; that whatever it might be, whether her original third, or a moiety acquired by the death of either of the other devisees, was to devolve upon her sons. This is not a case of the *"jus accrescendi"* by survivorship, as in joint tenancy, but a right of succession by virtue of the terms used in the will, *"per formam doni."*

Concurring in the conclusions reached by the Court below, the decree of the Circuit Court of Baltimore city is affirmed, with costs to the appellees in this Court.

*Decree affirmed, and*
*cause remanded.*

(Decided 14th May, 1874.)